STATE of Minnesota, Respondent,

v.

Fred Oliver STREETER, Appellant.

No. C4–85–330.

Court of Appeals of Minnesota.

Nov. 26, 1985.

Francis J. Rondoni, City Atty., Minneapolis, for respondent.

Andrew S. Birrell, Meshbesher, Singer & Spence, Ltd., Minneapolis, for appellant.

Heard, considered and decided by LANSING, P.J., RANDALL and CRIPPEN, JJ.

## OPINION

LANSING, Judge.

A jury convicted Fred Streeter of DWI, *see* Minn.Stat. § 169.121, subd. 1(a) (1984), and of presenting a false driver's license, *see* Minn.Stat. § 171.22(3) (1984). He moved for a new trial on these convictions, asserting prosecutorial misconduct in the closing argument. The trial court denied the motion, and Streeter appeals from that order and the conviction. We reverse and remand for a new trial.

## FACTS

Fred Streeter was pulled over by Officer Michael Harty for weaving and possibly hazardous driving. Streeter presented Harty with a driver's license issued to Lynn Gable Streeter which, according to Harty, had Fred Streeter's picture on it. Harty then asked Streeter to perform various field sobriety tests, which Streeter did not perform to the officer's satisfaction. Streeter refused to take a breath test and was transported to the Crystal police station.

While at the station, Harty searched Streeter's wallet and found a second driver's license issued to Fred Streeter. The appellant was then transported to the Hennepin County jail in order to obtain a reliable identification. Streeter was charged with DWI, presenting a false driver's license, giving false information to the police, and obstructing legal process.

At trial Officer Harty was the only witness to testify; Streeter did not take the stand. The prosecutor and defense counsel stipulated that Streeter's speech was impaired because of a stroke in 1978, and the jury was informed that Streeter's slurred speech was caused by the stroke. The State did not produce the allegedly false driver's license, but relied on Officer Harty's testimony that Streeter's picture appeared on both licenses.

During closing argument, the prosecutor said:

> What I would like to do now is briefly review *what the undisputed facts are.* * * *
>
> *   *   *   *   *   *
>
> * * * Officer Harty observed the defendant driving south on Highway 100 weaving all over the road * * *. *That is undisputed.*

(Emphasis added). The prosecutor then repeated in detail Officer Harty's testimony. He stated once again that those facts were "undisputed." Defense counsel objected, and the trial court instructed the jury that closing arguments by counsel are not evidence. After this cautionary instruction, the prosecutor's very next words to the jury were:

> *The facts I indicated are certainly undisputed and certainly uncontradicted.* We've had no documentary evidence and no testimony indicating that the facts as stated by Officer Harty are not, in fact, what happened.

(Emphasis added).

The prosecution characterized the officer's testimony as "uncontradicted" four more times during closing argument, and defense counsel objected to this characterization one further time:

> MR. RONDONI (prosecutor): [There] is *uncontradicted and undisputed evidence* that at the time he was stopped, he was paging through his billfold, past the driver's license three times * * *. The one he gave the officer indicated his name was Lynn Gable Streeter at a certain address with a certain date of birth;

but that driver's license had his picture on it. *That is uncontradicted.*

> MR. BIRRELL (defense counsel): Your Honor, I object to that. * * * The driver's license itself isn't even in evidence.

> THE COURT: The testimony of the officer—I will leave that to the jury, too, to make that determination * * *.

> *   *   *   *   *   *

> MR. RONDONI: It was Officer Harty who was there and who can testify about the defendant's degree of intoxication. *There's no missing evidence here. The driver's licenses are in the possession of the State—*

> MR. BIRRELL: Objection, Your Honor. He is arguing facts that are not in evidence.

> MR. RONDONI: Let me rephrase that, Your Honor. The driver's licenses were not presented to the jury since there is no need to at this point because the only evidence we have of what was on those driver's licenses is the testimony of Officer Harty; and *that testimony is uncontradicted* as to whose pictures were on there, as to whose addresses were on there, as to whose names were on there.

> What missing witnesses are there? I don't see any. I submit to you, ladies and gentlemen, that *it is the defense that is giving you an unreasonable posture here. Proof beyond a reasonable doubt. It is the defense that is being unreasonable.* * * *

> *   *   *   *   *   *

> * * * The defendant never indicated that because of a stroke "I don't have good coordination" or "I can't walk a straight line." The only thing he said was that he slurred his words. So let's leave aside the fact of the slurred speech. We still have *all of the other factors uncontradicted* and supported by the defendant's own admission that he had at least four to five drinks before he got behind the wheel of the car.

The prosecutor also said twice to the jury that he "believed" the State had shown beyond a reasonable doubt that Streeter was guilty of the crimes charged. Defense counsel did not object to these statements when they were made.

Finally, apparently in response to defense counsel's opening statement that the State was not going to produce all of the available witnesses who observed Streeter's condition at the time of the arrest, the prosecutor argued to the jury:

It would be a waste of the jury's time to bring in somebody who simply walked through the booking area and says *"Yeah, I saw him there."*

(Emphasis added).

The trial court dismissed a charge of obstructing legal process and instructed the jury on the three remaining charges of DWI, presenting a false driver's license, and giving false information to the police. Immediately after the jury retired defense counsel moved for a mistrial, claiming the prosecutor injected personal opinion into his closing argument, and, by use of the word "uncontradicted," implied the defendant had the burden to produce evidence. The trial court denied the motion.

During deliberations, the jury asked the court, "What happens to evidence collected by the officer, referring to the driver's license?" The court instructed the jurors that no license had been introduced and they should consider only evidence or testimony produced during trial. The jury returned verdicts of guilty to the charges of driving while under the influence and presenting a false driver's license. The trial court denied Streeter's subsequent motion for a new trial.

### ISSUE

Did the prosecutor's closing argument deprive the defendant of a fair trial?

### ANALYSIS

■ Prosecutorial comment on the defendant's failure to testify is not permitted under the fifth amendment of the United States Constitution. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). A prosecutor's description of the evidence as "uncontradicted" may be viewed by the jury as a reference to the defendant's silence when the defendant is the only person that could be expected to challenge the government's evidence. *United States v. Singer,* 732 F.2d 631, 637 (8th Cir.1984); *State v. Schneider,* 311 Minn. 566, 567, 249 N.W.2d 720, 722 (1977). The Minnesota Supreme Court has repeatedly warned prosecutors of the impropriety of calling the state's evidence "uncontradicted." *See State v. DeVere,* 261 N.W.2d 604, 606 (1977); *State v. Schneider,* 311 Minn. at 567, 249 N.W.2d at 722; *State v. Jensen,* 308 Minn. 377, 379, 242 N.W.2d 109, 111 (1976).

In this case the prosecutor characterized the State's evidence as "uncontradicted" or "undisputed" at least eight times during the course of what was probably a ten-minute closing argument. While the comments "did not stress defendant's silence per se as a basis for conviction," *State v. Schneider,* 311 Minn. at 567, 249 N.W.2d at 722, the comments were frequent and persistent. If there was any theme to the argument, it was that the defendant did not challenge the State's case. After defense counsel's first objection and the trial court's resulting cautionary instruction, the prosecutor immediately returned to the attack, saying

The facts I indicated are certainly undisputed and certainly uncontradicted. We've had no documentary evidence and no testimony indicating that the facts as stated by Officer Harty are not, in fact what happened.

The only reason we can surmise for the prosecutor's persistence with this argument, after an objection and cautionary instruction, is his belief in its effectiveness.

■ Even if, through the use of these words, the prosecutor did not intend to improperly suggest that defendant had an obligation to present evidence, that was undoubtedly the effect of his argument. There was only one witness at trial—the

officer who arrested Streeter. The only person who could have refuted the officer's testimony was the defendant.

■ The defendant also claims that the prosecutor twice argued facts not in evidence. The prosecutor did tell the jury that the driver's licenses were in the possession of the State, a fact which was not supported by the testimony. The officer testified only that he did not have the licenses. Statements by the prosecutor in closing argument which are unsupported by the record are improper. *State v. Kirvelay*, 248 N.W.2d 310 (Minn.1976).

■ However, the prosecutor's statement regarding what a hypothetical person who saw appellant in the booking room would testify to was not an argument of facts not in the record. Appellant argued in opening statement that the State had not presented other available witnesses, implying that the testimony of such other witnesses would have indicated appellant was not intoxicated. The prosecutor merely argued, based on Officer Harty's testimony, that there were no other witnesses who observed appellant long enough to be able to determine his level of sobriety. The State is allowed to anticipate and rebut arguments of the defense, *see State v. Carter*, 289 N.W.2d 454 (Minn.1979), and that is all that occurred here.

Finally, it is improper for a prosecutor to use expressions of personal opinion regarding the sufficiency of the evidence[1] or the guilt of the defendant, even where the expressions are "more idle cliche than deliberate expression of personal opinion." *State v. Ture*, 353 N.W.2d 502, 516–17 (Minn. 1984); *State v. Prettyman*, 293 Minn. 493, 495, 198 N.W.2d 156, 158 (1972).

Since we conclude that there was substantial prosecutorial misconduct in the closing argument, we must determine whether, in fact, the error was harmless. In *State v. Caron*, 300 Minn. 123, 218 N.W.2d 197 (1974) the court said:

> The test of determining whether prosecutorial misconduct was harmless depends partly upon the type of misconduct with which we are dealing. * * * Thus, in cases involving unusually serious prosecutorial misconduct this court has required certainty beyond a reasonable doubt that the misconduct was harmless before affirming. * * * On the other hand, in cases involving less serious prosecutorial misconduct this court has applied the test of whether the misconduct likely played a substantial part in influencing the jury to convict.

*Id.* at 127–28, 218 N.W.2d at 200.

In applying this test, we must look to the strength of the evidence against Streeter. As to the false license charge, the only evidence consisted of the officer's testimony that Streeter possessed two licenses with his picture on them. The jury's question during deliberations, asking where the licenses were, indicates that they were troubled by the absence of the licenses in the State's case. The prosecutor's erroneous statement that the licenses were in the possession of the State, despite the trial court's cautionary instruction, may have been used to satisfy the jury's concerns as to the existence of the two licenses and must have played a substantial part in influencing the jury to convict on this charge.

■ The evidence against Streeter on the DWI charge is much stronger, but the misconduct relating to this charge was more serious. Although there was no chemical test, Officer Harty testified that Streeter admitted to drinking four or five

---

1. We consider this objection even though it was first raised in a motion for a new trial. *See, e.g., State v. Schultz*, 262 N.W.2d 411 (1978) (court addressed allegation of prosecutorial misconduct on appeal when the error was raised in a post-trial motion even though no objection made until after the jury retired). In this case defense counsel had already interrupted the prosecutor's final argument several times with objections to other misconduct. Additionally, the prosecutor argued to the jury "it is the defense that is giving you an unreasonable posture here. Proof beyond a reasonable doubt. It is the defense that is being unreasonable." It is understandable that defense counsel would not want to risk antagonizing the jurors with too frequent objections during final argument.

scotches that evening. The trial court instructed the jury that arguments were not evidence, and in its final instructions said the defendant does not have to present evidence. Despite these instructions, we think the persistent, improper characterization of the evidence as "uncontradicted" when Streeter was the only person who could contradict the officer's testimony caused the jury to think either that Streeter did not dispute much of Officer Harty's testimony or that Streeter was obligated to testify or present evidence. To affirm, an error of this magnitude must be harmless beyond a reasonable doubt. *See United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983) (citing *Chapman v. California,* 386 U.S. 18, 24–26, 87 S.Ct. 824, 828–29, 17 L.Ed.2d 705 (1967) (Court assumed that two comments that the defendants "didn't challenge" the facts were impermissible and applied the standard of harmless beyond a reasonable doubt); *United States v. Singer,* 732 F.2d at 638. We cannot say beyond a reasonable doubt that the jury would have convicted Streeter absent the prosecutor's repeated statements that the State's evidence was uncontradicted.

## DECISION

Prosecutorial misconduct denied the defendant a fair trial.

Reversed and remanded for a new trial.