*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0448**

State of Minnesota,
Respondent,

vs.

Chris Harry McIntosh,
Appellant.

**Filed February 27, 2017
Affirmed
Connolly, Judge**

Hennepin County District Court
File No. 27-CR-14-25870

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Connolly, Judge; and Bjorkman, Judge.

# UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant argues he is entitled to a new trial because the prosecutor committed error that affected his substantial rights, and that his case should be remanded because the district court failed to consider his request for a downward dispositional departure. Because the objected-to error was harmless, the alleged unobjected-to conduct did not constitute plain error, and the district court sufficiently considered appellant's departure request, we affirm.

## FACTS

Respondent State of Minnesota charged appellant Chris Harry McIntosh with felony second-degree assault, felony terroristic threats, and felony carrying a pistol without a permit. The charges arose out of an incident with victim O.M. on September 2, 2015. After a jury trial, the jury convicted appellant of second-degree assault and terroristic threats, and acquitted appellant of carrying a pistol without a permit. The district court sentenced appellant to 36 months in prison for the second-degree-assault conviction and imposed no sentence for the terroristic-threats conviction. On appeal, appellant argues that the prosecutor committed error at trial, and that the district court either did not exercise or abused its discretion in failing to consider his motion for departure.

2

## DECISION

### I. Did the prosecutor commit error in closing argument and in questioning a witness?

*Objected-to error*

Appellant contends the prosecutor inappropriately shifted the burden during closing arguments by saying certain facts were "impossible for the defendant to deny or disprove," a statement to which defense counsel objected. When reviewing objected-to prosecutorial error, the supreme court has historically used a two-tiered approach that depends on the severity of the error. *See State v. Caron*, 300 Minn. 123, 127-28, 218 N.W.2d 197, 200 (1974). In cases involving serious prosecutorial error, the supreme court has required certainty beyond a reasonable doubt that the error was harmless before affirming, but in cases involving less serious error, the supreme court has considered whether the error likely played a substantial part in influencing the jury to convict. *Id.* However, it is unclear whether the two-tiered test still applies. *State v. Carridine*, 812 N.W.2d 130, 146 (Minn. 2012). Recently, the supreme court has applied the standard for severe error, certainty beyond a reasonable doubt that the error was harmless, and concluded that if the error is harmless under that standard, there is no reason to address the standard for less serious error because it could not be satisfied. *Id.*

Misstatement of the burden of proof constitutes error. *State v. Coleman*, 373 N.W.2d 777, 782 (Minn. 1985). However, immediately after the prosecutor said certain facts were "impossible for the defendant to deny or disprove," defense counsel objected to the prosecutor's suggestion that defense must disprove anything, the district court sustained

3

the objection, and the prosecutor moved on to a different argument. Though the prosecutor's statement constituted error, "corrective instructions by the [district] court can cure prosecutorial error." *State v. McDaniel*, 777 N.W.2d 739, 750 (Minn. 2010). The district court instructed the jury on the burden of proof three times, both before and after closing arguments. Defense counsel frequently reminded the jury in closing argument that the burden rested on the state, and the prosecutor reiterated the same in his rebuttal. Additionally, we review "the closing argument as a whole, rather than just selective phrases or remarks that may be taken out of context or given undue prominence to determine whether reversible error has occurred." *Id.* at 751. Given the context of the numerous statements and instructions to the jury that the state had the burden of proof, we conclude that the objected-to statement was harmless beyond a reasonable doubt.

In *State v. Wren*, the Minnesota Supreme Court outlined a number of factors for consideration when determining whether error is harmless beyond a reasonable doubt, including "how the improper evidence was presented, whether the state emphasized it during the trial, whether the evidence was highly persuasive or circumstantial, and whether the defendant countered it." 738 N.W.2d 378, 394 (Minn. 2007). The prosecutor's argument was not evidence, and the objected-to statement was brief, not referred to again, and not persuasive as to appellant's guilt. The analysis of these factors further supports the conclusion that the objected-to statement was harmless beyond a reasonable doubt.

*Unobjected-to error*

Appellant alleges three unobjected-to instances of prosecutorial error: the prosecutor described evidence as "undisputed and irrefutable" in closing, elicited

4

testimony that one witness was surprised at another's testimony, and invited the jury to convict based on appellant's confession. With respect to allegations of unobjected-to prosecutorial error, appellate courts apply a modified plain-error test. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). Under this test, appellant must still establish that the misconduct constitutes error and that the error was plain, which can be shown if the misconduct contravenes caselaw, a rule, or a standard of conduct. *Id.* But the burden then shifts to the state to demonstrate that the error did not affect appellant's substantial rights. *Id.* This third prong "is satisfied if the error was prejudicial and affected the outcome of the case." *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998). Even if the above three prongs are met, this court will correct the error "only if the fairness, integrity, or public reputation of the judicial proceeding is seriously affected." *State v. Jones*, 678 N.W.2d 1, 18 (Minn. 2004).

*"Undisputed and irrefutable"*

The prosecutor referred to certain evidence as "undisputed and irrefutable" four times, and the last two times indicated that that evidence was appellant's own admissions. Appellant argues this was improper because "[i]n a long line of cases, Minnesota's courts have held that it is prosecutorial misconduct to characterize the state's evidence as 'undisputed' or 'uncontradicted.'" Appellant relies on *State v. DeVere* and *State v. Streeter*. *State v. DeVere*, 261 N.W.2d 604, 606 (Minn. 1977); *State v. Streeter,* 377 N.W.2d 498, 501 (Minn. App. 1985).

In *DeVere*, the Minnesota Supreme Court reasoned that "prosecutors should avoid using the word 'uncontradicted' when referring to the state's evidence in closing argument

5

because the danger exists that it will improperly suggest to the jury that the defendant has an obligation to call witnesses." 261 N.W.2d at 606. However, the supreme court went on to note that the use of the term in context did not suggest to the jury that the defendant should have called witnesses, and the district court had clarified that issue in its instructions. *Id.* As a result, *DeVere* does not hold that the use of the term "uncontradicted" necessarily constitutes error, as appellant argues. Further, the concern with the term "uncontradicted" is that it implies a defendant has the duty to contradict the prosecution's evidence by calling witnesses. But the terms at issue here are "undisputed and irrefutable," which do not as strongly imply a requirement for a defendant to act in any given way, particularly when combined with the repeated clarification by all involved that the state carries the burden of proof. The context of these terms does not support a finding of plain error.

In *Streeter,* the prosecutor "characterized the State's evidence as 'uncontradicted' or 'undisputed' at least eight times during the course of what was probably a ten-minute closing argument," and the theme of the prosecutor's closing argument was that "the defendant did not challenge the State's case." 377 N.W.2d at 501. Immediately after the district court issued a cautionary instruction, the prosecutor in *Streeter* used the terms again, and went on to directly state that there was no evidence and no testimony indicating the facts as the state presented them were untrue. *Id.* In the case at hand, however, the allegedly problematic terms were used three times in a closing argument that spans 27 transcript pages and once in a rebuttal that spans four transcript pages. This prosecutor's general theme in closing was that appellant confessed and witness testimony corroborated

6

those confessions, not that appellant had failed to disprove the state's case. And both defense counsel and the prosecutor explicitly stated that appellant did not have to prove anything and that the state had the burden of proof.

The caselaw on which appellant relies is distinguishable and does not in fact establish that the words "undisputed and irrefutable" necessarily constitute error. Appellant has failed to show that the prosecutor's use of these words in context constituted plain error.

*Victim advocate's surprise at O.M.'s testimony*

Appellant next contends that the prosecutor elicited inadmissible testimony by asking "a witness to express an opinion on the truth of another witness's testimony, or . . . to comment on another witness's testimony." Appellant cites *State v. Pilot* as support for the impropriety of this type of question, but the Minnesota Supreme Court explicitly stated in *Pilot* that it had not adopted a blanket rule of law indicating the impermissibility of such questions. 595 N.W.2d 511, 518 (Minn. 1999). The *Pilot* court found no error when the prosecutor in that case directly asked "were they lying" questions. *Id.* *Pilot* does not support the argument for which it is cited. Such questions do not necessarily constitute error.

Further, the prosecutor here did not directly elicit testimony as to the truth of another witness's testimony. Earlier in the trial, O.M. testified to a completely different version of the facts than that which he described in his previous statements to police and to the prosecutor's office. In his testimony, O.M. said that a man named H.D. pointed a gun at O.M. O.M. also testified that he spoke with the victim advocate "several times about being

7

a part of this case," including one instance in which he allegedly told her "somebody else pointed a gun at [him] other than [appellant]." On direct examination of the victim advocate, the prosecutor inquired as to whether O.M. ever mentioned H.D. before testifying and she answered, "Never ever." He next asked what her "response . . . [or] natural reaction [was] when [she] heard that information." The victim advocate responded that she was "surprised and kind of amazed."

Though the difference is slight, the prosecutor's question here was not a "were they lying" question focused on eliciting the victim advocate's opinion of another witness's testimony as appellant contends. Rather, the question seeks an alternative perspective on events to which O.M. had testified. By asking such a question, the prosecutor responded to O.M.'s implied questioning of the victim advocate's credibility and offered more evidence to permit the jury to make its own credibility determinations. Appellant has failed to demonstrate that the prosecutor's question to the victim advocate constituted plain error.

*Prosecutor's reference to appellant's confession*

Appellant next contends that "the prosecutor committed misconduct by misstating the law." Because Minnesota statutorily prohibits convicting a defendant on the basis of confessions alone and requires other corroborating evidence, appellant argues that the prosecutor's repeated reference to appellant's confession as satisfying all elements was erroneous. Minn. Stat. § 634.03 (2014). However, a prosecutor can rely on confession evidence in conjunction with other evidence, and the "evidence needed to corroborate a confession to police is not required to address every element of the charged offense." *State v. Heiges*, 779 N.W.2d 904, 912 (Minn. App. 2010), *aff'd*, 806 N.W.2d 1 (Minn. 2011).

"The state's task is to bolster the confession by independent evidence of trustworthiness." *Id.* (quotation omitted). The prosecutor remarked on evidence other than the confession in closing, in some instances noting that the jury could rely on evidence beyond the confession and in other instances describing the corroborating evidence provided at trial. Had the prosecutor argued for conviction solely on the basis of appellant's confession, that would have constituted error. But that is not the case here, and we review statements in closing arguments in the context of the entire argument. *McDaniel*, 777 N.W.2d at 751. Appellant has failed to demonstrate that the prosecutor's repeated reference to the confession constituted plain error.

In sum, the objected-to error was harmless beyond a reasonable doubt. And appellant has failed to satisfy the first two prongs of the modified plain-error test to establish the alleged unobjected-to prosecutorial errors. Appellant is therefore not entitled to a new trial.

**II.      Did the district court abuse its discretion in sentencing by failing to thoroughly consider a dispositional departure on the record?**

Appellant argues that the district court erred by failing to consider his motion for a downward dispositional departure at sentencing. "We afford the [district] court great discretion in the imposition of sentences and reverse sentencing decisions only for an abuse of that discretion." *State v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014) (quotation omitted). A district court is not generally required to provide an explanation when it considers reasons for departure but imposes a presumptive sentence. *State v. Van Ruler*, 378 N.W.2d 77, 80 (Minn. App. 1985). "Only the *rare* case will merit reversal based on

the district court's refusal to depart. When the record contains evidence of factors supporting departure, which could have been, but were not, considered by the district court, we *may* remand for consideration of those factors." *State v. Johnson*, 831 N.W.2d 917, 925-26 (Minn. App. 2013) (emphasis added) (quotation omitted), *review denied*, (Minn. Sept. 17, 2013).

Appellant contends the district court failed to exercise its discretion by failing to consider valid departure factors as the district court did in *State v. Curtiss*, 353 N.W.2d 262 (Minn. App. 1984). In *Curtiss*, the district court said only that there was "no justifiable reason to deviate," apparently precluding arguments for and against departure. 353 N.W.2d at 263. Here, the district court continued sentencing for the purpose of accepting briefing on the very issues of departure and the applicability of mandatory minimums, and to allow the district court time to read and research the arguments of counsel. We do not assume that the district court intended to waste everyone's time by continuing the sentencing for briefing and then ignored both the briefs and the entire question of whether a departure was appropriate.

Alternatively, appellant contends the district court abused its discretion in denying his motion for departure. Appellant contends there was evidence of factors supporting departure before the district court; namely that appellant was "particularly amenable to probation, as demonstrated by his acceptance of responsibility, his lack of any violent criminal history, his relatively young age, and the state's decision to extend an offer of a probationary sentence before trial." Appellant's sentencing memorandum relied on the

10

presentence investigation report (PSI), contending the PSI "provide[d] an ample basis to depart in this case." However, the evaluative summary in the PSI stated:

> Clearly, [appellant] has made attempts to make changes in his life, but his ability to sustain positive change is questionable at this time as it appears that, when not under direct scrutiny, he reverts to previously established patterns. For this reason, this Officer cannot find [appellant] amenable to probation or further community based services.

Based on this analysis, the PSI writer recommended sentencing pursuant to the Minnesota Sentencing Guidelines, which presumed a commitment to the commissioner of corrections.

The PSI recommendation did not consider application of any mandatory-minimum-sentencing provisions, but the district court accepted briefing on the issue. The district court determined appellant was subject to a mandatory-minimum sentence resulting from the possession or use of a firearm in the commission of the offense. Minn. Stat. § 609.11, subd. 5 (2014). But a district court may depart from a mandatory-minimum sentence if it "finds substantial and compelling reasons to do so." Minn. Stat. § 609.11, subd. 8(a) (2014). If such reasons exist, the district court should deliberately consider them. *Curtiss*, 353 N.W.2d at 264.

Here, the record supports the district court's conclusion that there are not substantial and compelling reasons to depart from the mandatory-minimum sentence. Appellant argues that he is remorseful, youthful, and has a minimal criminal history. But as noted in the PSI, he does not have the support of family, failed a urinalysis test, missed appointments during his release, and had additional contact with law enforcement after being charged with this offense. While some factors may arguably support amenability to

11

probation, they do not reach the required showing of *particular* amenability to probation. *Soto*, 855 N.W.2d at 308-09. The district court did not abuse its discretion in denying appellant's departure motion.

Because the objected-to prosecutorial error was harmless beyond a reasonable doubt and appellant failed to establish that unobjected-to conduct constituted plain error, appellant is not entitled to a new trial. Because the district court sufficiently considered appellant's sentencing arguments and found no substantial and compelling reasons to depart from the presumptive guideline sentence, it did not abuse its discretion in denying appellant's departure motion.

**Affirmed.**